## NORTHWESTERN BANK v. FREEMAN.

### APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 18. Argued April 15, 18, 1898. — Decided October 24, 1898.

A description in a chattel mortgage of a given number of articles or animals out of a larger number is not sufficient as to third persons with acquired interests; but such a mortgage is valid against those who know the facts.

A purchaser of personal property, which is mortgaged, is charged with knowledge of every fact shown by the records, and is presumed to know every other fact which an examination, suggested by the records, would have disclosed.

Under the rule that the incident covers the principal, a mortgage of domestic animals covers the increase of such animals, though it be silent as to such increase.

THE appellees recovered judgment in the district court, which was affirmed on appeal to the Supreme Court of the Territory, from which an appeal has been taken to this court.

The facts found by the territorial Supreme Court are as follows:

"On July 10, 1890, Harry Fulton, one of the defendants in the court below, executed an alleged chattel mortgage for $7500, payable in one year, in favor of the Arizona Central Bank, one of the appellees herein and plaintiffs in the court below; that the description in said mortgage of the property purporting to be covered by it is as follows: '1200 lambs, marked — ewes with hole in left ear and split in right; wethers, hole in right ear and split in left ear; 1600 ewes marked hole in left ear and split in right ear; 2200 wethers marked hole in right ear and split in left ear, making 5000 sheep in all with the Fulton brand.'

"That on said day said Fulton executed another alleged mortgage for $4000, payable in ninety days, in favor of John Vories, one of the appellees herein and one of the defendants in the court below; that the description in said alleged mortgage is as follows: 'Wethers and dry ewes to the number of 1000, the wethers marked with a split in the left ear and a hole in the right; ewes marked with a hole in the left ear and a split in the right.'

"That on said day said Fulton owned and possessed 6200 sheep that were herded and run together, and this was all he owned, said sheep being marked as follows: 'Ewes and ewe lambs split in the right ear, hole in the left; wethers and wether lambs reverse;' and both of the said appellees had knowledge of this fact at the time they accepted their alleged mortgages, the one on 5000 head and the other on 1000 head.

200 head not being included in either of said mortgages, all of said sheep having the same mark and running in the same herd, and none of them being capable of identification save only by the ear mark put on them as aforesaid, and that therefore there was no way by which any of said sheep could be distinguished from any of the others.

. . "That said Fulton continued in the ownership and possession of all of said sheep, save only such as died, were sold by him, consumed or lost, until the 18th of December, 1893. At no time did appellees, or either of them, ever take or ever have possession of said sheep, or any of them, or of the increase thereof, nor were any of said sheep or the increase thereof ever by any one identified, designated or in any way segregated, apportioned or substituted to the or on account of the said pretended mortgages, or of either thereof. From date of said mortgages (July 10, 1890) to January 4, 1893, said Fulton from time to time sold of said sheep as follows: 1700 head, at $3 per head, that were by said Fulton accounted for, and the proceeds of which he deposited with the appellee Arizona Central Bank; that both of said appellees knew of these sales and consented to them.

. "On January 4, 1893, said Fulton executed a mortgage for $8885 in favor of Arizona Lumber and Timber Company, one of appellants herein and one of the defendants in the court below, covering, among other property, the following described sheep: 'About 3000 ewes, 1000 wethers, and 2000 lambs, same being all the sheep now owned by mortgagor, and including all wool and increase which may be produced by said sheep marked — ewes, split in right ear, hole in left; wethers reverse.' At the instance of appellees said appellant, Arizona Lumber and Timber Company, permitted the following recital to be inserted in said last-mentioned mortgage, namely: 'This being subject to a mortgage on 5000 of above sheep to Arizona Central Bank, and one on 1000 head. and the residence property to John Vories, said number, as described in mortgages, to be kept good out of increase.' There was consideration for the foregoing recital in the mortgage of January 4, 1893, namely, that the appellees should forbear

to foreclose their mortgages, and should release their claim on the wool clip of 1893, the wool at that time not having been shorn.

"That to August 30, 1893, $3000 of the amount claimed to be due on the mortgage of January 4, 1893, was paid out of wool proceeds, and that on said day said Fulton, for the purpose of securing a $500 advance, and applying the remainder as a payment on said mortgage of January 4, 1893, executed his promissory negotiable note, payable in 90 days, securing the same by a chattel mortgage for the sum of $6000 to the Arizona Lumber and Timber Company.

"That said mortgage was a conveyance, as a security for the payment of said note, of sheep, the same being in said mortgage described as follows, namely: 'About 3200 ewes, more or less; about 1300 wethers, more or less; about 1400 lambs, more or less, being all the sheep now owned by mortgagor, including all the wool and increase which may be produced by said sheep — marked, ewes and ewe lambs, split in right ear, hole in left; wethers and wether lambs, reverse.'

"That in said last-mentioned mortgage no recital or reference was made in any way, nor in any manner, to the existence of any other mortgage or mortgages whatsoever.

"That on the 29th day of September, 1893, and prior to the maturity of said last-mentioned note of $6000, said appellant Arizona Lumber and Timber Company, representing that said mortgage was a first and prior lien on said described sheep, and by means thereof, sold, assigned, endorsed and delivered said note and mortgage to the Northwestern National Bank, one of the appellants herein and one of the defendants in the court below, said Northwestern National Bank becoming an innocent purchaser for value.

"That on December 18, 1893, said Fulton, being then indebted to Riordan Mercantile Company, one of the appellants herein and a defendant in the court below, in the sum of $810.91, it brought its action in said district court against said Fulton whereby to collect the same, and at the same time caused to be issued out of the clerk's office of said court a writ of attachment, which was then levied on the property following,

namely: ' All the right, title and interest of the defendant
Harry Fulton in and to the following-described sheep : 2926
ewes, marked hole in left ear, split in right; 900 wether sheep,
marked hole in right ear, split in left ear; 1287 lambs — ewe
lambs marked hole in left ear, split in right; wether lambs
marked hole in right ear, split in left; 118 rams,' same being
all of the sheep then owned by said Fulton.

"That on 16th March, 1894, judgment was rendered in said
suit in favor of said plaintiff company and against said Fulton,
for said amount, and said attachment lien was foreclosed; that
on the 31st day of March, 1894, the sheriff of said county of
Coconino, by virtue of and pursuant to said judgment, sold
said property and delivered the same to the appellant Riordan
Mercantile Company, who then entered into the possession
thereof, was so in the possession thereof when this cause was
tried in the lower court, and are still in possession thereof.

"That by virtue of said writ of attachment the sheriff
attached all the sheep then owned by said Fulton, and that
on said day, to wit, on the 18th day of December, 1893, there
were of said sheep only 1000 head of ewes remaining out of
all the sheep that existed on July 10, 1890, the date of said
alleged mortgages to appellees; that the remainder of said
ewes, all the male sheep and the lambs, had by that time died,
been consumed, sold or lost.

"That subsequent to the making of said alleged mortgages
to said appellees, an oral agreement between them and the said
Fulton was made that the securities of appellees were to be
kept good out of the increase by substitution, the considera-
tion therefor being that said Fulton might sell and dispose of
the said sheep without interference from appellees.

"That Sisson, a witness for appellants in this case, is and
was during all of said transactions the treasurer of both the
Riordan Mercantile Company and the Arizona Lumber and
Timber Company, appellants herein, and that these two cor-
porations have practically the same officers.

"That in said district court said Arizona Central Bank
brought its suit as plaintiff against said Fulton, Vories, Dona-
hue as sheriff, the Arizona Lumber and Timber Company, the

Riordan Mercantile Company and the Northwestern National Bank, as defendants, asking for a foreclosure of its said alleged mortgage, the same being the above-entitled cause.

"That said action was tried and judgment was rendered foreclosing said alleged mortgages of both of appellees herein and also the said mortgage dated January 4, 1893, of said Arizona Lumber and Timber Company and the mortgage owned by said Northwestern National Bank as aforesaid, in which said judgment said court adjudged that appellees have a prior and first lien on said property, viz., the Arizona Central Bank upon 5000 sheep of the Fulton mark by reason of its said mortgage, and the said Vories on 1000 sheep of the Fulton mark by reason of his said mortgage; and said court decreed and ordered that an order of sale issue for the sale of all of said property to the sheriff of said county, and that the proceeds arising therefrom be divided by the sheriff and applied as follows, namely, at the ratio of five dollars to said Arizona Central Bank and one dollar to said Vories; that in case anything should be left after the payment of said two mortgages to said bank and Vories, the same should be applied to the payment of the judgments of said Northwestern National Bank and said Arizona Lumber and Timber Company and Riordan Mercantile Company in the order named."

There are seventeen assignments of errors, which are somewhat confused. They are grouped and presented by counsel under seven heads as follows:

"First. In the first assignment of error it is set forth that the trial court erred in adjudging, and the territorial Supreme Court erred in affirming said judgment, that the mortgages of the appellees were prior liens on *all* of the sheep owned by defendant Fulton at the time of the execution of said mortgages, even though said mortgages had been good and prior liens on the sheep specified therein.

"Second. In the second, third, fifth and eighth assignments of error it is set forth that the trial court, and the territorial Supreme Court in sustaining its holding, erred in admitting in evidence the mortgages from defendant Fulton

to the appellees, marked Exhibit 'A' and 'B,' against the objections of the appellants; and in overruling motion of appellants to strike out of the evidence the said mortgages; and in holding that said mortgages were valid and subsisting liens on all of said property; and in holding and deciding that the description of said property in appellees' said mortgages was a sufficient description.

"Third. In the fourth and seventh assignments it is set forth that the court erred in admitting, over the objection of the appellants, testimony concerning a conversation between J. H. Hoskins, John Vories, F. W. Sisson and Harry Fulton, and evidence relative to an alleged agreement, and evidence tending to prove a breach of contract between the appellees and appellant Arizona Lumber and Timber Company.

"Fourth. The trial court erred, as set forth in the fifteenth and sixteenth assignments, in adjudging that on the date of its decree herein the mortgage of said appellee bank covered five thousand head of sheep of the Fulton herd and mark, such adjudication attempting to substitute five thousand head of sheep after the making of said two mortgages to appellees; the trial court erred in attempting said substitution and then holding it good as to appellants Riordan Mercantile Company and Northwestern National Bank.

"Fifth. The trial court erred, as set forth in the eleventh assignment, in adjudging that said mortgages of appellees were mere securities for debts, the legal title to said sheep remaining in said Fulton notwithstanding said mortgages and in adjudging that said sheep should be sold and the proceeds paid to said Arizona Central Bank and said Vories, in the proportion of five dollars to the former and one to the latter.

"Sixth. The trial court erred, as set forth in the seventeenth assignment, in adjudging that appellant Northwestern National Bank was bound by said pretended agreement of substitution or was bound by said pretended mortgages of appellees, or that said mortgages were prior liens on said property, or on any of it to the mortgage owned by said appellant.

"Seventh. In the sixth, ninth, tenth, twelfth, thirteenth

and fourteenth assignments it is set forth that the court erred in denying and overruling defendants' motion for a new trial of said cause; and in deciding that the mortgage to said appellee the Arizona Central Bank conveyed five thousand head of sheep, marked: ewes with hole in left ear and split in right, wethers with hole in right ear and split in left ear, and that a thousand more of said sheep were conveyed by mortgage to said appellee Vories, with the same marks; and in adjudging that the property included in the said attachment lien of the said Riordan Mercantile Company and sold and delivered to said company thereunder was the same property that is conveyed, or attempted to be conveyed, by the mortgages of said appellees; and in adjudging that the rights, title and interests obtained by said Riordan Mercantile Company, by virtue of said attachment lien and sale, was subject to the alleged rights of said appellees by virtue of their said pretended mortgages; and in adjudging that appellants Riordan Mercantile Company and Arizona Lumber and Timber Company had actual notice of the property conveyed by the said alleged mortgages of said appellees; and in adjudging that F. W. Sisson, as the treasurer of said Riordan Mercantile Company, agreed with said appellees that the number of sheep in said mortgages of appellees should be kept good out of the increase of said sheep, and that the wool was released by said agreement to said company, and that the consideration thereof was an alleged forbearance to foreclose said mortgages of said appellees."

*Mr. A. B. Browne* for appellants.  *Mr. A. T. Britton* and *Mr. E. E. Ellenwood* were with him on the brief.

*Mr. Fred. Herrington* for appellees.  *Mr. Cass E. Herrington* was with him on the brief.

Mr. Justice McKenna, after stating the case, delivered the opinion of the court.

The contest is for priority. The territorial Supreme Court awarded it to the mortgages of the appellees. The appellants

contend that this was error because of the fact that the mortgages respectively covered 5000 and 1000 head of sheep, and that Fulton owned 6200 head, and that hence the mortgages were invalid on account of insufficient descriptions. The mortgages do not state that Fulton owned a greater number than those he mortgaged, but the fact is found by the court.

The rule is laid down that, as to third persons who have acquired interests, a description in a mortgage of a given number of articles out of a larger number is not sufficient. Jones on Chattel Mortgages, sec. 56 *et seq.*, and cases cited.

But such a mortgage is valid against those who know the facts. *Cole* v. *Green*, 77 Iowa, 307; *Clapp* v. *Trowbridge*, 74 Iowa, 550.

The mortgage of January 4, 1893, executed by Fulton to the Arizona Lumber and Timber Company was undoubtedly taken by the latter not only with actual notice, but it was expressly made subject to the prior ones to appellees. The finding of the court is: "At the instance of appellees said appellant, Arizona Lumber and Timber Company, permitted the following recital to be inserted in said last-mentioned mortgage, namely: 'This being subject to a mortgage on 5000 of above sheep to Arizona Central Bank, and one on 1000 head, and the residence property to John Vories, said number, as described in mortgages, to be kept good out of increase.' There was consideration for the foregoing recital in the mortgage of January 4, 1893, namely, that the appellees should forbear to foreclose their mortgages, and should release their claim on the wool clip of 1893, the wool at that time not having been shorn."

The court further finds that on August 30, 1893, Fulton paid to the Arizona Lumber and Timber Company $3000 out of the proceeds of the wool from the mortgaged sheep, secured from the company an advance of $500, and for that and the amount due on his note "executed his negotiable promissory note payable in ninety days, securing the same by a chattel mortgage for the sum of $6000." In this mortgage there was no recital or reference to the existence of any other mortgage. On the 29th of September, 1893, and prior to this

maturity, the "appellant, the Arizona Lumber and Timber Company, representing that said mortgage was a first lien, sold, endorsed and delivered the note and mortgage to the appellant, the Northwestern National Bank." It is this note and mortgage that are in controversy and which are claimed as prior liens to the mortgages of appellees. The bank is found to be an innocent purchaser for value. By this is meant that it had no actual notice of the prior mortgages. Did the law impute notice to it? Certainly not by the record of the mortgages to appellees. Did it by the record of the mortgage of January 4, 1893, to the Arizona Lumber and Timber Company? If the bank was charged with notice of that mortgage it was charged with notice of its contents. "Notice of a deed is notice of its whole contents, so far as they affect the transaction in which notice of the deed is acquired." 2 Sch. & Lef. 315, cited and approved in *Boggs* v. *Varner*, 6 Watts & Sergeant, 469, 473.

A purchaser is charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed. Secs. 710 and 710*a*, Devlin on Deeds, and cases cited. The mortgage of January 4, 1893, to the Arizona Lumber and Timber Company was by the same mortgagor as that of August 30, the one sold to the Northwestern National Bank, and covered the same sheep, and hence, under the rule announced, the bank was charged with notice of it and of its recitals. It was not given up or satisfied. It was preserved as an independent lien.

It was not satisfied, appellants say, because it covered other property beside the sheep. This is an insufficient reason. If the debt it secured was paid, there was no reason for retaining the lien on any property. But whatever the reason, it was retained and affected the title. That is the material circumstance, and not in whose name it stood. It was in the chain of the title and affected it. It would have been found if looked for, and would have notified the bank of the transactions which conducted to it and caused it to be made subject to the mortgages of the appellees. We therefore think the

territorial courts committed no error when they assigned priority to those mortgages.   Nor was it error to subordinate the attachment and judgment of the Riordan Mercantile Company to them.   That company had, according to the finding of the court, actual notice.

The territorial court found that on the 18th of December, 1893, there were one thousand head of ewes remaining out of all the sheep which existed on July 10, 1890, the date of the mortgages to appellees; that the remainder of the ewes, all of the male sheep, and the lambs had died, been consumed, sold or lost.  The findings are absolutely silent as to whether there were or were not other sheep in existence at that time, or at the time the decree was entered.   We infer from the briefs of counsel that there were others — the increase of those mortgaged — and there is a contention as to whether these are covered by the lien of the mortgages.

Under the rule that the incident follows the principal, a mortgage of domestic animals covers the increase of such animals, though it is silent as to such increase.   This court said in *Arkansas Valley Land and Cattle Co.* v. *Mann*, 130 U. S. 69, by Mr. Justice Harlan "according to the maxim *partus sequitur ventrem*, the brood of all tame and domestic animals belong to the owner of the dam or mother."   2 Bl. Com. 390.   See also *Pyeatt* v. *Powell*, decided by the Circuit Court of Appeals for the Eighth Circuit, 10 U. S. App. 200, and cases cited.

But whatever was doubtful or disputable in the mortgages of appellees as to the increase was resolved and settled by agreement between all who had interests, and was expressed in the mortgage of January 4, 1893.   There is nothing in the record to show a substitution except by the increase, and therefore we are not called upon to pass upon some of the interesting questions argued by appellants.   Nor are we embarrassed by considerations of the increase being in or having passed out of the " period of nurture."   Such considerations are only important when a subsequent purchaser or mortgagee has taken without notice, actual or constructive, which we have seen the Northwestern National Bank did not.

· ·The objections to testimony assigned as error in the fourth and seventh assignments of error were not well taken. The testimony showed the transactions and the relations of the parties to them.

*Decree affirmed.*