Samuel E. Packwood v. William Atkinson & Foxworth Company.

**Mortgage.** *Live stock. Increase. Innocent purchaser.*

> Under a deed of trust on a mare and other property, and "any increase of property, real or personal, that may be hereafter acquired by purchase or otherwise," a purchaser at trustee's sale will acquire title to a colt of the mare foaled while the trust deed was in force, as against a purchaser of the grantor who bought with actual notice of the lien. *Williams* v. *Crook*, 63 Miss., 9, distinguished; *Mississippi Valley Co.* v. *Chicago, etc., R. R. Co.*, 58 *Ib.*, 904, cited.

From the circuit court of Marion county.

Hon. John R. Enochs, Judge.

Packwood, appellant, was plaintiff, and the Atkinson & Foxworth Company, appellees, defendant in the court below.

Action of replevin by appellant against appellees to recover one horse. On the trial in the circuit court plaintiff (appellant) offered in evidence a deed of trust given by one Welda to plaintiff on a bay mare and other property, and "any increase of property, real or personal, that may be hereafter acquired by purchase or otherwise." This deed of trust was duly acknowledged and recorded. Plaintiff offered said deed of trust as a link in his chain of title to the horse, and then offered to show that plaintiff acquired title to the horse by virtue of the provisions of the deed of trust, and by virtue of said horse being a colt of the mare acknowledged to be included in the deed of trust, and that the colt was born during the time the deed of trust was in force, and that the deed of trust was foreclosed according to its terms at a public sale, and that plaintiff purchased the horse at that sale, and the debt secured by the deed of trust was credited with the price. Plaintiff then offered to show that the defendant had actual knowledge of plaintiff's lien on the horse. Defendant objected to the introduction of the deed

of trust: (1) Because it is void as to defendant, who is a third party; (2) because plaintiff has no right to property that is not embraced in the deed of trust. The court sustained defendant's objections to all this testimony, and plaintiff excepted. There was judgment for defendant, from which the plaintiff appealed.

*Mounger & Mounger,* for appellants.

One question presented by this record is: Does a deed of trust which conveys and incumbers the dam incumber also her natural increase as against a subsequent lienor, who takes his lien with actual notice of the former lien and is not a purchaser for value, in that he takes his lien merely to secure an already existing indebtedness? Another question presented is whether the provision in the deed of trust, offered in evidence, providing for the conveyance to the trustee of all the property, real or personal, to be afterwards acquired by Welda is void for indefiniteness, and to appellee who took the deed of trust under which they claimed with actual notice of appellant's claim and took it to secure an antecedent debt? As to the first proposition, that is, for authority that the first deed of trust would prevail, even though it had not contained the provision referred to, we rely upon the following authorities: *Maize* v. *Bowman,* 17 L. R. A., 81, and the note there given. See especially the subtitle in the note on page 82: "As between mortgagee of dam and other claimants." Note specially the following passage: "The offsprings of mortgaged animals born after the execution of the mortgage are subject to the lien thereof." *Dyer* v. *State,* 88 Ala., 225; *Foreman* v. *Proctor,* 9 B. Mon., 724; *Hughes* v. *Graves,* 1 Litt., 317; see also 85 Ala., 417; 10 Am. & Eng. Ency. Law (1st ed.), 360, note 4; 16 Am. & Eng. Ency. Law (2d ed.), 348 *et seq.* A mortgage of domestic animals covers their increase, although it is silent as to their increase. *Bank* v. *Freeman,* 171 U. S., 620 to 621; 43 Lawyers Co. Ed., 308.

As to the second proposition, that is, as to whether the clause in the deed of trust purporting to convey all property to be afterwards acquired is valid as to appellees, there is no reason that we have seen why a third party with notice, and who has parted with nothing, should be in any better position than a party to the deed of trust would be in. That this provision is valid between the parties there can be no question. *White* v. *Thomas,* 52 Miss., 49; *Williams* v. *Crook,* 63 Miss., 9. The court below thought that this last case was authority for the position that this kind of a provision in a deed of trust is absolutely void as to third parties, whether with or without notice. We do not think so. Our supreme court has never so held, and we can see no reason why it should. See also *Bank* v. *Freeman,* 171 U. S., 620, as to this proposition.

*Weathersby & Mayson,* for appellee.

The provision in the deed of trust that all increase of property, real or personal, acquired by purchase or otherwise, is void, and appellant cannot recover under that. *Williams* v. *Crook,* 63 Miss., 9. If appellant can recover at all, it must be under the common law rule that the brood follows the dam; but appellant cannot recover under that. It will, therefore, be necessary to notice the kind, character and extent of the estate vested in the mortgagee under the laws of this state. The common law doctrine, that the mortgagee acquires and holds the legal estate at law, while the estate of the mortgagor, his equity of redemption, only remains in him, has been abrogated in this state by statute. Section 2449 of the code of 1892 provides that before sale under a mortgage or deed of trust, the mortgagor or grantor shall be deemed the owner of the legal title of the property conveyed in such mortgage or deed of trust until after a breach of the condition in such mortgage or deed of trust. This being true, the mortgagor only has a lien upon the property *in esse* at the time of the execution of the mortgage; the lien does not extend to the subsequently begotten in-

crease, hence appellant has no lien upon the horse in question, and must fail. The supreme court of California in construing a statute identical with ours said: "Prior to 1873 the giving of a cattle mortgage in this state vested in the mortgagee the title to the property mortgaged (*Heyland* v. *Badger,* 35 Cal., 404, and cases there cited), and while this rule prevailed the foregoing decisions would have been applicable. The civil code, however, went into effect at the beginning of that year, and under its provisions the mortgagor is not, by the execution of the chattel mortgage, divested of his title to the property, but still remains its owner, while the mortgagee has only a lien thereon. Civ. Code, § 2888; *Bank of Ukiah* v. *Moore,* 106 Cal., 673. Consequently the foregoing decisions cannot be regarded as having authoritive force, but the rights of the parties must be determined upon the general principles controlling the relations between mortgagor and mortgagee. In the absence of any express agreement on the subject, the lien created by the mortgage is limited to the property which is described in the mortgage, and does not include other property of the same character which the mortgagor may have afterwards acquired and placed with the mortgaged property. Jones on Chattel Mortgages, secs. 138, 154. If the mortgagor retains possession of the mortgaged property, he is at liberty to deal with and use it as his own, and whatever income or profit may be derived from such use belongs to him and not to the mortgagee. See *Simpson* v. *Ferguson,* 112 Cal., 180. If, in the case of sheep, the use to which he puts the ewes is for breeding lambs, there can be no sufficient reason given why the lambs that are dropped by the ewes should belong to the mortgagee any more than the wool that is sheared from their backs. But we hold that inasmuch as they were begotten upon the ewes after the mortgage was executed, the mortgagee has no lien upon them or right to their possession. *Shoobert* v. *De-Motta,* 53 Am. St. Rep., 207. For a discussion of the estate which a mortgagee takes in the mortgaged property in the several states, see Pomeroy's Eq. Jur., vol. 3, sec. 1186 *et seq.*

WHITFIELD, C. J., delivered the opinion of the court.

The appellant's offer was to introduce, in connection with the trust deed, which contained a clause expressly covering increase of personalty, proof that appellee had actual notice that this horse was subject to the lien of this trust deed. Under all the authorities, if appellee had such actual notice, the appellant should have prevailed. The trust deed, and the proof offered with it, should have been received. The court below manifestly held the clauses as to "increase of personalty and realty" and "after-acquired property" void, under its view of *Williams* v. *Crook*, 63 Miss., 9. But that was a wholly different case. That was the case of an alleged title to a mule that had been attempted to be substituted for a horse covered by a trust deed. The case which controls here is *Mississippi Val. Co.* v. *Chicago, St. L. & N. O. R. R. Co.*, 58 Miss., at page 904, where it is distinctly held that a mortgage of animals, with their increase, as "a flock of sheep and its natural increase and future-grown wool," is valid at law. The court there said: "A distinction is made by some of the authorities between mortgages of future acquisitions executed by railroad companies, and similar instruments made by natural persons. It is said that a mortgage of a railroad and its future property will carry all after-acquired property appurtenant to and necessary for building and operating the road, and carrying out the purposes for which it was created, while a similar instrument will be inoperative if executed by a private person. This is true if the mortgage executed by the private person is upon a specified piece of property, without reference to any accretions or additions to it, because there can be no accretions of property appurtenant to the person of the mortgagor; but it is untrue if the individual has mortgaged his business and the property then appurtenant to or afterwards to grow out of and to be added by accretion to the particular business that is pledged. Thus, a natural person, equally with a corporation, can execute a valid mortgage of a ship and the profits of its voyage, or of a factory and the machinery then in it and

to be placed in it, or of a farm and the products to be produced upon it, or of a flock of sheep and its natural increase and future-grown wool; and so a railroad company can execute, in general terms, a valid mortgage of its roadbed and franchises, and all of its real and personal property then owned or thereafter acquired, provided the future acquisitions be such as belong naturally to the business of constructing and maintaining the road and performing its primary end as a common carrier of passengers and freights. The things which may be deemed essential or useful, and therefore appurtenant, to the great work of building and operating a railroad, will frequently be more extensive and varied in their character than those which can properly be regarded as accretions to the business of private persons; but the principle is the same, and, where the facts concur, the law must be the same as to both." This is well settled by abundant authority, and it is difficult to see how the court below could have been misled to the contrary. *"Partus sequitur ventrem"* is the common-law maxim. See *Dyer* v. *State,* 88 Ala., 229 (7 So. Rep., 267); Jones' Chat. Mort., secs. 149, 150; *Bank* v. *Freeman,* 171 U. S., at page 630, 19 Sup. Ct., 39; 43 L. Ed., 307; *Maize* v. *Bowman* (Ky.), 17 L. R. A., 81, and note on page 82 (S. C., 19 S. W., 589), "As between Mortgagee of Dam and Other Claimants," and other authorities in brief of appellant's counsel.

There is no question here of the rights of innocent third parties being superior to the rights of the mortgagee in a mortgage with this clause in it, "after the time required for the suitable nurture of the young," the increase of the dam. It was distinctly offered to be shown here that the appellee had actual notice. See Jones' Chat. Mort., sec. 149.

*Reversed and remanded.*