BURLINGTON STATE BANK et al. v. MARLIN NAT. BANK et al.   (No. 5313.)

(Court of Civil Appeals of Texas.  Austin. April 1, 1914.  Rehearing Denied April 29, 1914.)

1. CHATTEL MORTGAGES (§ 87*) — RECORD — PLACE—"SHALL THEN BE SITUATED."

Under Rev. St. 1911, art. 5655, providing that every chattel mortgage not accompanied by an immediate delivery and an actual change of possession shall be void as against creditors of the mortgagor and subsequent purchasers, mortgagees, or lienholders in good faith, unless the mortgage or a copy thereof is forthwith filed in the office of the county clerk of the county where the property shall then be situated, or, if the mortgagor resides in this state, then of the county in which he then resides, the term where the property "shall then be situated," means where the property is situated when the mortgage is executed, and not when it is recorded.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 162–165; Dec. Dig. § 87.*]

2. CHATTEL MORTGAGES (§ 150*) — RECORD — TIME —"FORTHWITH."

Under such statute a filing of the mortgage seven days after its execution, when it might have been filed immediately without inconvenience, was not a filing "forthwith," which means immediately, at once, without inexcusable delay, and hence was void as to mortgages subsequent to its filing.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 246–252; Dec. Dig. § 150.*

For other definitions, see Words and Phrases, vol. 3, pp. 2916–2925; vol. 8, p. 7665.]

3. CHATTEL MORTGAGES (§ 153*) — RECORD — EFFECT—"GOOD FAITH."

Under such statute, the expression "good faith" is synonymous with conscience, and embraces those obligations which are imposed on one dealing with property by the circumstances surrounding it at the time, and a mortgage in "good faith" means a mortgage for a valuable consideration without notice, and not lacking in that caution or diligence which a man of ordinary prudence is accustomed to exercise in making purchases—quoting Words and Phrases, vol. 4, pp. 3117, 3121; vol. 8, p. 7672.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 255–262, 267, 268; Dec. Dig. § 153.*]

4. CHATTEL MORTGAGES (§ 48*)—DESCRIPTION OF PROPERTY—CERTAINTY.

A chattel mortgage of cotton described as 10 bales of cotton crop of 1910 then being picked, and to be ginned in F. county, owned by the mortgagor free from all liens, was not void for uncertainty, since it could be identified by showing what cotton the mortgagor was having picked when it was executed.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 93–95; Dec. Dig. § 48.*]

5. CHATTEL MORTGAGES (§ 117*)—CONSTRUCTION—PROPERTY CONVEYED.

A chattel mortgage of 10 bales of cotton of the crop of 1910 then being picked and to be ginned in a certain county would not convey any specific bales, but in equity would be suffi-

cient to convey an interest in the cotton described in the proportion of 10 bales to the entire amount then being picked by the mortgagor.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 202; Dec. Dig. § 117.*]

6. CHATTEL MORTGAGES (§ 138*)—PRIORITY—EVIDENCE.

Where a tenant on October 7th mortgaged 10 bales of cotton of the crop of 1910 then being picked in a certain county, a showing by the landlord that he purchased 12 bales of the tenant after October 13th did not support a judgment in favor of the mortgagee against the landlord for the excess over the landlord's lien, since all of the 10 bales mortgaged may have been picked before the landlord's purchase.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 228–236; Dec. Dig. § 138.*]

7. APPEAL AND ERROR (§ 901*)—REVIEW—BURDEN OF PROOF.

A party appealing from the judgment has the burden of showing that it is erroneous.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1771, 3670; Dec. Dig. § 901.*]

8. CHATTEL MORTGAGES (§ 49*)—FORM AND CONTENTS—DESCRIPTION—CERTAINTY.

A chattel mortgage mentioning seven horses and mules, but not describing them except by color, age, and height, and not stating that the mortgagor was the owner of the property, or where it was situated, was void for uncertainty as to two of the mortgagor's mules which had been covered by a previous mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 90–92; Dec. Dig. § 49.*]

Appeal from District Court, Falls County; Prentice Oltorf, Judge.

Action between Batte & Baskin, Ben Johnson, Burlington State Bank, Tarver-Henslee Company, Marlin National Bank, and others. Judgment for Bates & Baskin against the Burlington State Bank and for Marlin National Bank against the Tarver-Henslee Company, and Burlington State Bank, Marlin National Bank, and Tarver-Henslee Company appeal. Affirmed as to other parties not appealing, and as to the remainder reversed and remanded.

W. A. Morrison, of Cameron, for appellants. Tom Connally, of Marlin, and Chambers & Baskin, of Cameron, for appellees.

### Findings of Fact.

JENKINS, J.  Ben Johnson was a tenant farmer, and prior to December, 1908, had lived in Milam county. Batte & Baskin were dealers in horses and mules, and lived in Cameron, Milam county.  They were acquainted with Johnson, and had sold him mules prior to October 15, 1909, for which he had paid them.  In December, 1908, Johnson moved to the farm of Tarver-Henslee Company in Falls county, and continued to reside there to the time of the trial of this case.  On October 15, 1909, Johnson purchased two mules from Batte & Baskin in the town of Cameron, and executed a mortgage thereon to secure the purchase money in the sum of $250.  He immediately took the mules to his home in Falls county, where they re-

mained to the time of the trial hereof, July 19, 1913. Batte & Baskin· recorded their mortgage in Milam county October 22, 1909. They did not know that Johnson· lived in Falls county at that time. On November 1, 1909, Johnson gave a mortgage on these same mules and other personal property to the Burlington State Bank. On January 3, 1910, Johnson gave a mortgage on these mules and other property to the Planters' National Bank, which prior to the trial hereof was transferred to the Burlington State Bank. On October 7, 1910, Johnson gave a mortgage to the Marlin National Bank upon cotton described as follows: "Ten bales of cotton crop of 1910 now being picked and to be ginned at High Banks in Falls County. * * * Said property is owned by me in good faith and a perfect title, free from all liens whatsoever, and I agree to hold same in Falls county, Texas, where it is now located, free of all liens other than the one hereby granted, until the indebtedness hereinafter mentioned is paid in full." This mortgage was recorded in Falls county, October 13, 1910. The mortgage to the Burlington State Bank and also the mortgage to the Planters' National Bank each recited that the property therein described was free from all mortgages and other liens. Neither the Burlington State Bank nor the Planters' National Bank had any · actual knowledge of the mortgage executed to Batte & Baskin at the time their mortgages were taken. By agreement of all parties hereto, the property mortgaged by Johnson was taken possession of and sold by the Burlington State Bank, and the proceeds held subject to disposition by final judgment herein. The trial court held that the mortgage of Batte & Baskin was superior to the mortgages given to the Burlington State Bank and to the Planters' National Bank, and consequently gave judgment against the Burlington State Bank for the amount of Batte & Baskin's debt, the evidence showing that the mules had been sold for more than enough to pay said debt.

Tarver-Henslee Company, subsequent to October 13, 1910, purchased from Johnson 12 bales of cotton of the value of $60 each. Johnson was a tenant on the farm of Tarver-Henslee Company during the year 1910, and they advanced him money to enable him to pick his cotton, and the court allowed this amount by virtue of their landlord's lien, and gave judgment in favor of the Marlin National Bank against Tarver-Henslee Company for the balance, $370.15. From this judgment the Marlin National Bank and Tarver-Henslee Company have appealed.

### Opinion.

· [1] The judgment in favor of Batte & Baskin involves the construction of article 5655, R. S. 1911, which, so far as applicable to this case, reads as follows: "Every chattel mortgage, deed of trust, or other instrument of writing, intended to operate as a mortgage of or lien upon personal property, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the property mortgaged or pledged by such instrument, shall be absolutely void as against the creditors of the mortgagor or person making same, and as against subsequent purchasers and mortgagees or lienholders in good faith, unless such instrument, or a true copy thereof, shall be forthwith deposited with and filed in the office of the county clerk of the county where the property shall then be situated, or if the mortgagor or person making the same be a resident of this state, then, of the county of which he shall at that time be a resident."

[2] It is the contention of appellees Batte & Baskin that the words "filed in the office of the county clerk of the county where the property was then situated," means where the property is situated at the time the mortgage is executed. Appellant Burlington Bank contends that it means where the property is situated at the time the mortgage is recorded. We agree with appellees Batte & Baskin as to this matter. It will be observed that with reference to recording a mortgage in the county where the mortgagor resides, the language is "of which he shall at that time be a resident." We think this aids in the construction of the statute; that the language, "shall at that time be a resident," evidently means at the time of the execution of the mortgage, and that likewise the time referred to with reference to the situation of the property means the time when the mortgage is executed. Such being the case, had Batte & Baskin complied with the statute, there can be no question but that they would have a prior lien as against the mortgages subsequently executed. But they did not comply with the statute. The statute required that such mortgage should be "forthwith deposited with and filed in the office of the county clerk," etc. The mortgage was not filed until seven days after its execution. The office of Batte & Baskin was in sight of the courthouse of Milam county, and no reason is shown why they might not, without inconvenience, have filed the mortgage immediately after its execution. "Forthwith," means immediately, at once, without inexcusable delay. They did not file the mortgage forthwith. Hackney v. Schow, 21 Tex. Civ. App. 613, 53 S. W. 713.

[3] The statute declares that the failure to record the mortgage "forthwith" shall render the same "absolutely void" as against certain parties mentioned. This language leaves no room for construction; as to such parties the mortgage must be held to be void, and therefore of no force whatever. If an instrument is void, it is as if it had never existed. In fact, a void instrument . never

had any legal existence. Such being the case, it remains to be considered whether or not the Burlington State Bank, and the Planters' National Bank come within the definition of the parties mentioned in the statute, as to whom such mortgage is void. The parties mentioned are "subsequent purchasers and mortgagees or lienholders in good faith." Both of the banks mentioned were "subsequent mortgagees and lienholders." If they were such "in good faith" within the meaning of that term as used in the statute, then the Batte & Baskin mortgage must be held to be absolutely void as to them. It has been held that a mortgage not recorded forthwith is good against a subsequent mortgagee when the same was taken after the record of the first mortgage in the proper county. These decisions can be upheld only upon the ground that the subsequent mortgagee was not a mortgagee in good faith.

"Good faith consists in an honest intention to abstain from taking an unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious."

"Good faith, in general, means without notice, as well as for a valuable consideration."

"A want of that caution and diligence which an ordinary man of ordinary prudence is accustomed to exercise in making purchases is, in judgment of law, a want of good faith."

Words and Phrases, p. 3117.

"A mortgage in good faith means the same thing as a mortgage for a valuable consideration without notice."

"No one can become a purchaser or a bona fide incumbrancer of property in good faith if he have notice of a pre-existing mortgage, although such mortgage may not be verified or recorded in accordance with the statute."

"The expression 'good faith,' as used in the statute providing that a chattel mortgage shall cease to be valid against the creditors of the person making the same or mortgagees in good faith after the expiration of one year from following the same unless an affidavit of renewal is filed, is synonymous with 'conscience.' It embraces those obligations which are imposed upon one in dealing with property by the circumstances surrounding it at the time."

Words and Phrases, p. 3119.

It may well be held that where a mortgage is recorded in the proper county, though it be not recorded "forthwith," a subsequent mortgagee is under obligation to examine the record. If he does so, he will discover the existence of the mortgage, and therefore cannot be a mortgagee in good faith. If it is his duty to do so under the circumstances of the case in common fairness to others who may have taken a prior mortgage, and he fails to make such examination, this might well be held to show an absence of good faith. Such we take it is the effect of the decisions in this state, holding that a mortgage which is not forthwith recorded is nevertheless superior to a mortgage taken after the record of the prior mortgage. The Batte & Baskin mortgage was not of record in Falls county, where Johnson lived and where the property was situated, at the time of the execution of the subsequent mortgages. But this alone is not necessarily sufficient to show a want of good faith in the subsequent mortgagees. Johnson lived very near the line of Falls and Milam counties; he had previously lived in Milam county. It does not appear from the record what, if any, inquiry the subsequent mortgagees made as to when and where Johnson obtained the mules. The trial court held that the Batte & Baskin mortgage was superior to the subsequent mortgages, by reason of the fact that it was recorded in Milam county before the execution of the second mortgage. This record not having been made "forthwith," such holding was error, for which this case must be reversed. As to whether the subsequent mortgages are superior to the Batte & Baskin mortgage will be made to depend in another trial upon whether or not the subsequent mortgagees were mortgagees in good faith. They were mortgagees for a valuable consideration and without actual notice, and therefore must be held to have been mortgagees in good faith, unless it is shown that the circumstances were such as required them to investigate the records of Milam county as to prior mortgages by Johnson.

[4] It is the contention of appellants Tarver-Henslee Company that the mortgage taken by the Marlin Bank on the cotton mentioned therein was void for uncertainty. With this we do not agree. The mortgage stated in what county the cotton was situated, and described it as cotton then being picked, and as being the property of Johnson. We think this language imports being picked by Johnson. It appears from the evidence that Johnson lived on the Tarver-Henslee farm, west of the Brazos river, and had so resided for the years 1909 and 1910, and that he did not raise cotton on any other farm in that county, and did not own any other cotton. The cotton could be identified by showing what cotton he was having picked at the time the mortgage was executed; and we think the recitations were sufficient to have put Tarver-Henslee Company upon notice, in view of the fact that they knew what cotton he had raised that year.

[5, 6] However, we do not think that this is sufficient to sustain the judgment against Tarver-Henslee Company. The evidence shows that they purchased 12 bales of cotton from Johnson after October 13, 1910; Johnson mortgaged only 10 bales, which were being picked on October 7th. For aught that appears, all of these 10 bales may have been

picked before October 13th. Again, it appears that Johnson, in the year 1910 raised about 30 bales of cotton. The mortgage would not have conveyed any specific bales of cotton, but in equity would be sufficient to convey an interest in the cotton described in the proportion of 10 bales to the entire amount then being picked by him. The evidence does not show what this would be, for which reason the judgment against Tarver-Henslee Company must be reversed.

[7, 8] There is another feature of this case to which no reference has been made in the briefs, but we think it material. Batte & Baskin obtained a judgment against appellant Burlington Bank. The burden is on this appellant to show that this judgment is erroneous. It attempts to do so in part by showing that Johnson mortgaged the mules to the Planters' National Bank, which mortgage was transferred to appellant. This mortgage mentions seven horses and mules, but does not describe the same except by color, age, and heighth. It does not state that Johnson was the owner of this property, nor where the same was situated. We think this mortgage as to such animals is void for uncertainty.

The judgment of the trial court disposed of a number of parties other than those mentioned herein, from which no appeal has been taken, as to whom the judgment is affirmed.

For the reasons mentioned, the judgment herein, in so far as it is in favor of Batte & Baskin against appellant Burlington State Bank, and in so far as it is in favor of the Marlin National Bank against Tarver-Henslee Company, will be reversed and the cause remanded.

Affirmed in part and in part reversed and remanded.