### In re PETERSEN.

(District Court, D. Nevada. August 25, 1917.)

1. CHATTEL MORTGAGES ☞47—DESCRIPTION OF PROPERTY.

As against creditors and others who may acquire adverse rights, mortgage of specified number of articles or animals out of large number is void for uncertainty, when particular articles are not separared or designated, so they can be distinguished from others of same kind; but it is enough if description, supplemented by suggested inquiries, enables parties to identify property.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. CHATTEL MORTGAGES ☞47—DESCRIPTION OF PROPERTY—SITUS.

The situs of the property covered by chattel mortgage is usually regarded as an important fact in its identification, which must be accomplished by the description, to validate the mortgage against creditors and others who may acquire adverse rights.

3. CHATTEL MORTGAGES ☞49(1)—DESCRIPTION OF PROPERTY.

A mortgage of property described as one span of colts, three years old, one gray and one bay, is defective; but if it further states the colts are in the mortgagor's possession on his farm, in a certain township, county, and state, the description is sufficient.

4. CHATTEL MORTGAGES ☞47—DESCRIPTION OF PROPERTY—SUFFICIENCY.

Chattel mortgage covering "seventeen head of work stock," etc., and books and accounts due mortgagor in business conducted under his name, insufficiently described property to be valid against creditors; neither location of property nor residence of mortgagor or mortgagee being given.

5. BANKRUPTCY ☞172—VALIDITY—LAW CONTROLLING.

The validity of a chattel mortgage against creditors represented by a trustee in bankruptcy must be determined by the law of the state in which the mortgage was made and where the property was situated.

6. BANKRUPTCY ☞180—CHATTEL MORTGAGE—STATUTE.

Under Rev. Laws Nev. § 1083, as to fraudulent conveyances, chattel mortgage given by debtor to wife 12 years after indebtedness to her was contracted, no payments having been made, and intended to protect debtor's property from his creditors, was void as to his trustee in bankruptcy.

In Bankruptcy. In the matter of Emil Petersen, bankrupt. On petition for review of an order of the referee refusing to allow a preferred claim. Order affirmed.

See, also, 252 Fed. 846.

George Springmeyer, of Reno, Nev., for petitioner.
James D. Finch, of Reno, Nev., for trustee.

FARRINGTON, District Judge. The referee in bankruptcy, having refused to allow as preferred the claim of Emma Petersen, she has filed a petition for review. The questions certified by the referee are: First, whether the mortgage contains a proper description; and, second, whether fraud is shown.

The description of the property, as it appears in the chattel mortgage, is as follows:

"Seventeen (17) head of work stock, seventeen (17) harnesses therefor, six (6) driving horses, two (2) buggies, one (1) spring wagon, one (1) lot of binding chains and stretchers, one (1) lot of blacksmith tools, one (1) lot of plows, harrows, scrapers and other farming implements, and all and singular the book accounts and bills due or unpaid said mortgagor in his business carried on and conducted under the name of Emil Petersen."

In the summary of the evidence, the referee says the mortgage did not include all of the mortgagor's horses, wagons, machinery, etc., nor any stock of hay, grain, or wood, but covered all book accounts and bills owing to him.

"Beside the mortgaged 'work stock,' which included mules, draft, saddle and driving horses, bankrupt had, at the time the mortgage was given, other saddle and driving horses, beside range horses—the range horses being in another county than that in which his hay yard business was conducted, which was in said Ormsby county. The bankrupt at the same time owned

eight or more wagons, two hay presses, three bob sleds, a safe, and other articles of property not included in the mortgage."

[1] It is a well-established rule that the mortgage of a specified number of articles or animals out of a large number is void for uncertainty, when the particular articles intended to be conveyed are not separated or designated, so they can be distinguished from others of the same kind. As against creditors and others who may acquire adverse rights, the mortgage is not effective unless it affords some means of identifying the property. It must give some marks or characteristics by the aid of which the thing mortgaged can be singled out. It is enough if the description, supplemented by inquiries which the instrument itself suggests, will enable a third party to identify the property. The description must contain enough to direct the mind of the searcher to facts from which he may ascertain the property with reasonable certainty. As was said in Ehrke v. Tucker, 99 Kan. 52, 160 Pac. 985:

"The suggestion which indicates the line of inquiry must come from the mortgage itself, and cannot rest alone in the minds of the mortgagor and mortgagee." Northwest Bank v. Freeman, 171 U. S. 620, 19 Sup. Ct. 36, 43 L. Ed. 307; Jaffrey v. Brown (C. C.) 29 Fed. 476; Street v. Sederburg, 41 Colo. 128, 92 Pac. 29; Westinghouse Co. v. McGrath, 131 Iowa, 226, 108 N. W. 449, 117 Am. St. Rep. 421–424; Dierling v. Pettit, 140 Mo. App. 88, 119 S. W. 525; Chandler v. West, 37 Mo. App. 631–635; Barrett v. Fisch, 76 Iowa, 553, 41 N. W. 310, 14 Am. St. Rep. 238, 239; Jones on Chattel Mortgages, §§ 54, 56; 6 Cyc. 1025.

The fact that the parties to the mortgage are able to identify the property, or to state what stock was intended to be covered thereby, is not what is required. The description in the mortgage must direct the attention to some source of information beyond the words of the parties themselves. It must furnish the data by which the mortgaged chattels may be identified. Barrett v. Fisch, 76 Iowa, 553, 41 N. W. 310, 14 Am. St. Rep. 238, 239. If the oral testimony of the parties were sufficient, as the mortgagee here claims, few descriptions would or could be fatally defective, and the purpose of requiring chattel mortgages to be recorded in order to give notice to the public would be defeated.

[2] The situs of the property is usually regarded as an important fact in its identification. Neither the location of the property nor the residence of the mortgagor or mortgagee is given in the mortgage, though the affidavit, the certificate of acknowledgment and the promissory note set out in the mortgage were made at Carson City, Nev. The Nevada Act declares that the mortgage shall not be valid—

"for any purpose against any other person than the parties thereto unless * * * it shall be recorded in * * * the county where the property is situated, and also in the county where the mortgagor resides." Rev. Laws Nev. § 1080.

[3] A mortgage of property described as one span of colts, three years old, one gray and one bay, is defective; but if the further statement that the colts were in the mortgagor's possession on his farm in a certain township, county, and state, were added, the description

would be sufficient. Jones on Chattel Mortgages, §§ 54a, 55; Northwestern Bank v. Freeman, 171 U. S. 620, 19 Sup. Ct. 36, 43 L. Ed. 307. In Moebus v. Collins, 85 N. J. Law, 430, 89 Atl. 986, a New Jersey case, the court held:

Whether "a description of the mortgaged property as 'fourteen cows' is sufficient depends on the situation at the time the chattel mortgage was given. If the mortgagor then owned only 14 cows, title would pass under the mortgage. If he owned more, title would not pass as against a bona fide purchaser for value."

In Simon Casady & Co. v. German Savings Bank, 159 Iowa, 149, 140 N. W. 401, an Iowa case, the property covered by a chattel mortgage was described thus:

"Forty head of three-year-old steers, weight about 1,200 pounds, color reds and roans. Worth about $60.00 per head. The same is now in my possession in sections 14 and 15, Lee township, Madison county, Iowa."

The mortgagor, at the time the mortgage was given, owned 140 head of cattle answering this description. The cattle were sold; the plaintiff mortgagee thereafter brought suit to establish an equitable lien to the funds arising from the sale of the cattle. Following a long line of Iowa cases, the court held the mortgage void for uncertainty in the description, consequently its record gave no notice to any one.

In Burlington State Bank v. Marlin Nat. Bank (Tex. Civ. App.) 166 S. W. 499, the mortgage mentioned seven horses and mules, but did not describe them, except by color, height, and age; it did not state that the mortgagor was the owner of the animals, nor where they were situated. The mortgage was held to be void. To the same effect, see Reynolds v. Tifton Guano Co., 20 Ga. App. 49, 92 S. E. 389; Stewart v. Jaques, 77 Ga. 365, 3 S. E. 283, 4 Am. St. Rep. 86; Milner Banking Co. v. Adair, 18 Ga. App. 575, 90 S. E. 170; Chandler v. West, 37 Mo. App. 631–635; Bozeman v. Fields, 44 Mo. App. 432.

[4] The description contained in the mortgage, under these authorities, appears to be insufficient as to the work stock, driving horses, and blacksmith tools.

[5, 6] 2. It is contended that the referee in bankruptcy erred in holding the chattel mortgage void for fraud. The validity of the mortgage must be determined by the law of Nevada, the state in which the mortgage was made and where the property was situated. Etheridge v. Sperry, 139 U. S. 266, 277, 11 Sup. Ct. 565, 35 L. Ed. 171. In section 1083 of the Revised Laws of Nevada it is provided that:

"Every conveyance, or assignment, in writing or otherwise, of any estate or interests in lands, or in goods in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods, or things in action * * * made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, and every bond, or other evidence of debt given * * * with the like intent, as against the persons hindered, delayed or defrauded, shall be void."

In order to render a conveyance void under the above statute it is not necessary that it should have been executed with an actual fraudulent intent; it is sufficient that the purpose was to hinder or delay creditors. The grantor may actually believe that delay will enable him

to pay his debts, and thus prove an advantage to his creditors, and yet the mortgage be void under the statutory language quoted. The statute does not permit the mortgagor to be the judge as to whether his action will benefit creditors or not. If his conveyance was intended to secure time by delaying or hindering creditors, it is void, even though he was convinced he was acting for their best interests. Bigelow on Fraudulent Conveyances, p. 116.

The intent to delay, however, must be something more than a mere purpose to enable the mortgagee or grantee to collect his claim. The mere preferring one creditor to another is not a violation of the statute. In order to render such a conveyance void on the ground that it was intended to hinder or delay creditors, it must have been executed for that purpose—that is, to secure delay advantageous to the debtor and disadvantageous to his creditors; in other words, it must have been specially intended by the maker to have the effect of hindering and delaying his creditors in the collection of their claims, and protecting his property. Johnson Baillie Shoe Co. v. Bardsley (C. C. A. 8th Cir.) 237 Fed. 763, 150 C. C. A. 517, 38 Am. Bankr. Rep. 492–497; Coder v. Arts, 213 U. S. 223, 240, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008, 22 Am. Bankr. Rep. 1; Jones on Chattel Mortgages, § 338.

The indebtedness for which the Petersen mortgage was given was incurred prior to May 4, 1896. No payments having been made during an interval of more than 12 years, on April 9, 1909, when the bankrupt was in failing circumstances, he gave his wife a new note for $3,000, covering all the previous indebtedness, and secured it with the chattel mortgage in question. The mortgage was recorded on the same day. In the summary of the evidence it is stated that the mortgage was given as security, and also "to protect her husband from creditors so that he might continue his hay yard, wood, and hauling business."

Not only before, but after, the mortgage was given, Mrs. Petersen acted as bookkeeper for her husband; she was aware of his financial condition; after 12 years, during which no payments were made on the indebtedness by Petersen, the note and mortgage were made and recorded, and thereafter the mortgagor conducted his business apparently just as he had before. He collected his bills and applied the proceeds for his own business, for his own benefit, or in payment of indebtedness to parties other than his wife. She never demanded or received any accounting of the mortgaged property in use, nor any payments on the mortgage. Petersen, notwithstanding such action was expressly prohibited in the mortgage, gave a subsequent mortgage on the same property to Sarman, another creditor, on which he made payments. This he did with Mrs. Petersen's knowledge, and without objection from her.

The only reasonable inference to be drawn is that the protection of Petersen's property from his creditors was the important purpose to be accomplished by the mortgage, and that it was so intended by both Mr. and Mrs. Petersen.

The order of the referee is affirmed.